* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and the subject matter.
2. The employee is Norman W. Hood.
3. The employer is Magnum Group, Inc.
4. The carrier on the risk at the time of the alleged injuries was Zurich US.
5. The defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed on March 8, 2002, the date of injury.
6. The average weekly wage was $813.26.
7. The issues for determination are:
 a. Whether the job provided by defendant-employer is suitable employment; and
b. Whether the plaintiff is disabled.
8. Prior to the hearing before the Full Commission, the parties stipulated to the entry of the plaintiff's records from Triangle Spine and Back Care Center. Such records are hereby incorporated into the record.
 * * * * * * * * * * * EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: I.C. Forms, medical records, personnel and payroll records.
2. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence at the hearing:
a. Plaintiff's Exhibit #1: Letter, dated 2/18/05.
3. At the deposition of rehabilitation counselor Tina Bryant, the following Exhibits were admitted into evidence:
 a. Defendants' Exhibit #1: Letter, dated 17 March 2005, job analysis; and
b. Defendants' Exhibit #2: Resume of deponent.
4. At the deposition of rehabilitation counselor Stephen D. Carpenter, the following Exhibits were admitted into evidence:
 a. Deposition Exhibit #1: Rehabilitation Evaluation of plaintiff.
 * * * * * * * * * * *
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was age 59, and had completed high school. The defendant-employer is a highway contractor. The plaintiff began employment with the defendant-employer on August 6, 1990, as a serviceman. His duties consisted of the maintenance of large equipment, including earthmovers, bulldozers, backhoes, rollers, pavers, cranes, trench digging machines, and off-road dump trucks. The plaintiff's day-to-day activities consisted of changing fluids, lubrication, greasing, changing filters, and performing inspections. The plaintiff earned $15.50 per hour as of March 2002.
2. On March 8, 2002, the plaintiff was servicing a JCB rubber tire backhoe when the driver of the machine swung the bucket and struck him in the right chest. The plaintiff was thrown against a truck and fell against an air compressor, injuring his left shoulder. The plaintiff reported his injury to the defendant-employer, but did not seek medical attention at that time and missed no time from work.
3. The plaintiff continued to experience worsening pain in his left shoulder following the incident of March 8, 2002. On June 11, 2002, the defendant-employer sent the plaintiff to Concentra Medical Centers for treatment of his left shoulder. The plaintiff also reported episodes of pain shooting into his left leg, and reported pain in his back and left knee; however, the doctors at Concentra would only treat the left shoulder pursuant to instructions from the defendant-carrier. The plaintiff was diagnosed with a left shoulder contusion and shoulder impingement. He was provided with medication and scheduled for physical therapy three times weekly for two weeks. In addition, the plaintiff was given restrictions of no reaching above the shoulders, no lifting of more than 10 pounds and no pushing or pulling with more than 10 pounds of force.
4. On June 18, 2002, the plaintiff presented to his primary care physicians at Raleigh Associated Medical Specialists and reported back pain and right side pain in addition to the left shoulder injury.
5. On June 19, 2002, the medical note from Concentra identified neck pain, as well as the shoulder injury. The plaintiff continued to treat with Concentra and participate in physical therapy without improvement and on June 24, 2002, he was referred to orthopedist Dr. Andrew P. Bush.
6. The plaintiff presented to Dr. Bush on July 8, 2002. Dr. Bush ordered an MRI of the plaintiff's shoulder. Dr. Bush reviewed the MRI on July 15, 2002, and diagnosed the plaintiff with a full thickness tear of the supraspinatus and internal derangement of the left shoulder. He scheduled surgery on the plaintiff's shoulder for August 17, 2002.
7. For personal reasons not enumerated in the record, the plaintiff's surgery was postponed until January 27, 2003. Dr. James R. Post of the Raleigh Hand Center performed the surgery. Thereafter, the plaintiff returned to physical therapy and remained out of work until March 17, 2003, when he was released to return to light duty with the restriction of no arm use above the waist and no lifting at all with the left arm.
8. The defendants accepted plaintiff's claim as work-related on a Form 60 filed on February 5, 2003, and paid for the medical treatment and temporary total disability compensation until the plaintiff's return to work.
9. The plaintiff returned to work at light duty as a parts runner, then eventually returned to his previous job as a serviceman. On September 12, 2003, Dr. Post released the plaintiff and opined that the plaintiff should avoid overhead activities at work with his left arm, could occasionally lift up to five pounds to shoulder level, but no frequent lifting at shoulder level with his left arm. Dr. Post assigned a 22% permanent partial impairment rating and recommended that the plaintiff continue a home exercise program as instructed by his physical therapist.
10. Part of the plaintiff's job duties prior to his injury included occasionally changing the teeth on a backhoe bucket using a two or five pound hammer. The plaintiff was also required to change bulldozer blades and scraper blades. The bulldozer blades are approximately four feet long and weigh at least 40 pounds. The scraper blades can weigh up to 80 pounds. The plaintiff also had to "drop belly pans," a protective covering under the engine and transmission of the equipment, in order to service filters, hoses, etc. The belly pans can weigh between 15 and 100 pounds. The serviceman must crawl under the machine to drop the belly pan and then drag it away to access the engine.
11. Upon his return to his previous work, the plaintiff was unable to accomplish many of these tasks. He testified that he performed approximately one half of the work he performed prior to his injury, as he was no longer able to climb, squat, crawl, bend, stoop, or do overhead work. Although he continued to work a full schedule, the plaintiff spent approximately three to four hours per shift sitting in his truck while two other servicemen performed the tasks that plaintiff could not.
12. On September 30, 2003, the plaintiff presented to Dr. Gary L. Smoot with complaints of chronic right shoulder pain, lateral flank pain, and upper thoracic and neck pain. He was diagnosed with incidental C4 through C7 advanced cervical spondylitic changes, mild thoracic spine degenerative changes, L4/5 grand one anterolisthesis and L5/S1 moderate to severe degenerative changes with prominent anterior and posterior osteophytes and endplate sclerosis. The plaintiff received epidural injections and was ultimately referred to Dr. William Lestini.
13. Plaintiff presented to Dr. Lestini on June 16, 2004, for evaluation of neck, back, right arm, and right leg pain. The plaintiff reported to Dr. Lestini that he worked as tolerated and was permitted to leave early if he got tired or started having pain. Following an examination and review of the plaintiff's MRI, Dr. Lestini diagnosed the plaintiff with cervical spondylosis with a history of trauma causing onset of neck and arm pain. He also noted degenerative changes of the lumbar spine, including a degenerative spondylolosthesis at L4-5 and vertical degenerative collapse of L5-S1, which "certainly could have become aggravated at the time of his injury and historically this is consistent that he injured these areas at the time of his event, causing chronic pain with back and leg symptoms secondary to DDD and stenosis."
14. Dr. Lestini opined that the plaintiff's "complaints are primarily related to the findings in each of the cervical and lumbar regions and these most likely are related to the trauma associated with his injury." He suggested a bone scan and additional laboratory work and wrote the plaintiff out of work pending the outcome of the tests.
15. The plaintiff returned to Dr. Lestini on June 24, 2004. The plaintiff's primary problems were with his neck and right arm, with shoulder girdle pain, neck pain and trapezial pain with radiation of pain and numbness into the medial tow digits of the right hand. Dr. Lestini ordered a CT myelogram and EMG and nerve conduction studies. He returned the plaintiff to light duty work.
16. On September 7, 2004, Dr. Lestini reviewed the studies. The cervical myelogram showed stenosis in the neck, primarily between C5-6 and C6-7. The plaintiff also presented with continuing significant right shoulder pain. Dr. Lestini noted, "despite the multiple changes noted above, the patient still attempts to work. He is climbing unprotected heights and working repairing machinery with wrenches, etc. He is finding it difficult to do this given his pain and weakness in both his upper and lower back."
17. Dr. Lestini opined that the plaintiff could not perform his regular duties without some permanent modifications, including no climbing any unprotected heights, no lifting over 20 pounds occasionally and no overhead shoulder work. Dr. Lestini further opined that the plaintiff would need ongoing medication management of some kind, depending on future scans and treatment. He referred the plaintiff to Dr. Robert Allen to see if surgical decompression and/or stabilization would benefit him.
18. Plaintiff presented to Dr. Allen on October 19, 2004. Dr. Allen agreed with the diagnosis of Dr. Lestini and recommended a continuation of conservative care as opposed to surgical intervention.
19. On December 22, 2004, the plaintiff was laid off and received unemployment compensation. The greater weight of the evidence shows that the lay off was not related to the plaintiff's injuries but was due to an annual slow-down in highway construction during the winter months and that the plaintiff was aware of this reason. The plaintiff received unemployment benefits during this period and was rehired on a part-time basis beginning on March 5, 2005.
20. The plaintiff's employment records indicate that in the 109 weeks of work since May 2002 (excluding the period of time when the plaintiff was laid off), the plaintiff worked 30 or more hours in 99 weeks, more than 50 hours per week for 36 weeks, 60 or more hours per week for seven weeks and 70 or more hours for four weeks. However, it is noted that the evidence also shows that the plaintiff was permitted to accumulate substantial overtime by filling the need for a serviceman on the job site in case someone needed something off the truck; a position that required plaintiff to do no more than sit in the truck and wait. Even when called upon, the plaintiff would only perform tasks that were within his physical capabilities. Accordingly, the number of hours worked by the plaintiff is not indicative of his wage earning abilities or lack of disability during this period.
21. At some point, the defendants offered plaintiff the job of parts runner. The position requires driving a pickup truck delivering parts to mechanics shops and to project sites. The defendant-employer maintains that most vendors will load heavy parts for the runner and the mechanics in the field would unload. The job pays between $10.00 and $12.00 per hour. The defendant-employer currently has two employees performing this job on a part-time basis, and the defendant-employer offered testimony that no additional personnel is currently necessary to meet their parts running needs.
22. Vocational expert Stephen Carpenter administered several vocational tests to the plaintiff and determined that the plaintiff reads at a seventh grade level, spells at a sixth grade level and performs arithmetic at a fifth grade level. Mr. Carpenter opined that the plaintiff's abilities disqualify him for most clerical, administrative, or office work positions. Based upon the results of additional testing of the plaintiff's memory, concentration, and attention, as well as upper extremity dexterity and strength testing, Mr. Carpenter opined that the plaintiff would have difficulty obtaining and maintaining competitive employment and recommended retirement.
23. Mr. Carpenter also opined that the field of heavy machinery maintenance cannot be performed within the plaintiff's permanent restrictions as imposed by Dr. Lestini and that the plaintiff could not return to his former employment without substantial modification of the position. Additionally, the plaintiff cannot perform the parts runner job due to the pain caused by lengthy driving and his inability to perform heavy lifting. Mr. Carpenter further opined that the only positions available to the plaintiff within his restrictions and his abilities would be unskilled, minimum wages positions paying approximately $6.00 per hour.
23. The defendants offered the deposition testimony of vocational expert Ms. Tina Bryant. Ms. Bryant recommended that the plaintiff could perform the parts runner position; however, she did not observe the performance of the position and related it to a behind-the-counter parts job and not one that required delivery. She opined that a delivery position such as UPS or FedEx would be classified as a medium to heavy duty position.
24. The Full Commission finds that on March 8, 2003, the plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with the defendant-employer.
25. The Full Commission additionally finds that the plaintiff is medically unable to return to his former position with the defendant-employer. The current position performed by plaintiff is so modified that it does not provide an accurate measure of the plaintiff's earning capacity and is not reflective of a position available in the competitive market.
26. The parts runner position is likewise unsuitable for the plaintiff due to his inability to drive for any length of time and the necessity of lifting parts weighing more than plaintiff's restrictions permit.
27. The plaintiff has been working part-time for the defendant-employer since March 5, 2005.
28. The plaintiff's average weekly wage at the time of his compensable injury was $813.26, yielding a compensation rate of $542.20 per week.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of the employment on March 8, 2002. As a result of the injury by accident, the plaintiff injured his left shoulder, neck back and ribs. N.C. Gen. Stat. § 97-2(6).
2. The serviceman position and the parts runner position do not constitute suitable employment for the plaintiff and his refusal to accept either position is not grounds for suspension of the plaintiff's benefits. N.C. Gen. Stat. § 97-32.
3. As a result of the compensable injury, the plaintiff is entitled to temporary total disability compensation at the rate of $542.20 per week for those periods that Dr. Lestini wrote the plaintiff out of work. The plaintiff is further entitled to temporary total disability benefits beginning upon his cessation from his current unsuitable employment with the defendant-employer and continuing until the plaintiff obtains suitable employment at wages equal to or greater than his pre-injury wages. Such temporary total disability benefits shall not run concurrent with the temporary partial disability benefits provided herein. N.C. Gen. Stat. § 97-29.
4. The plaintiff is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between his pre-injury earnings and his earnings upon his return to work on March 5, 2005, and continuing for a maximum of 300 weeks from the date of injury or until he ceases working for the defendant-employer. N.C. Gen. Stat. § 97-30.
5. The plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §97-2(19).
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendants shall pay temporary total disability compensation to the plaintiff at the rate of $542.20 per week for those periods that Dr. Lestini wrote the plaintiff out of work.
2. Subject to a reasonable attorney's fee herein approved, the defendants shall pay temporary partial disability compensation at the rate of two-thirds of the difference between the plaintiff's pre-injury earnings and his earnings upon his return to work on March 5, 2005, and continuing for a maximum of 300 weeks from the date of injury or until he ceases working for the defendant-employer.
3. The defendants shall further pay to plaintiff temporary total disability benefits at the rate of $542.20 per week beginning upon his cessation from his current unsuitable employment with the defendant-employer and continuing until the plaintiff obtains suitable employment at wages equal to or greater than his pre-injury wages. The portion of such compensation that has accrued shall be paid in a lump sum. Such temporary total disability benefits shall not run concurrent with the temporary partial disability benefits provided herein.
4. A reasonable attorney's fee of 25% of the compensation awarded to the plaintiff herein is hereby approved to be deducted from lump sums due the plaintiff and paid directly to the plaintiff's counsel. Thereafter, every fourth payment of compensation due the plaintiff shall be paid directly to the plaintiff's counsel.
5. The defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
6. The defendants shall pay the costs.
This the 8th day of May 2006.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER